IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS CORIA RAMIREZ,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-06973-CRB

**ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING EVIDENTIARY HEARING**

Petitioner Jose Luis Coria Ramirez was detained and arrested in his driveway while taking his two-year-old child to daycare. See Pet. (dkt. 1) ¶ 1. He argues that the ICE officers who arrested him did so without a warrant. Id. ¶ 2. Petitioner filed a habeas petition and now seeks a temporary restraining order (TRO). Id.; App. (dkt. 3-2). The Court held a hearing earlier today, at which Respondents Sergio Albarran, Field Office Director of the San Francisco Immigration and Customs Enforcement Office, David J. Venturella, Acting Director of the United States Immigration and Customs Enforcement, Markwayne Mullin, Secretary of the United States Department of Homeland Security, and Todd Blanche, Acting Attorney General of the United States, opposed the application.[1] See Motion Hearing (dkt. 7). Because the Court concludes that Petitioner is likely to succeed in demonstrating that his arrest was unlawful, it GRANTS the application for a TRO. It also SETS an evidentiary hearing for Tuesday, July 21, 2026, at 11:00 am.

---

[1] Respondents did not file an opposition brief and did not fully investigate the underlying facts in advance of the motion hearing. Both are entirely reasonable given the short duration of time between the underlying incident and the motion hearing.

## I.    BACKGROUND

Petitioner was born in Mexico in 1992.  Pet. ¶ 19.  He is a father to three children, ages 13, 9, and 2.  Id.  He was previously in the United States on an employment visa and timely left.  Id.  He then re-entered the United States in 2021 without inspection, and has remained here since.  Id.  He has no prior criminal contacts.  Id. ¶ 3.  He lives with his partner and his three children and is a "long-term resident of Redwood City."  App. at 12.

Yesterday, Petitioner was in his driveway in Redwood City about to take his two-year-old child to daycare when ICE officers blocked him in.  Pet. ¶ 1.  About five or six officers, two with their faces covered, told Petitioner that there was an arrest warrant issued against him and that he was detained.  Magalhaes Decl. (dkt. 3-3) ¶ 6.  The officers did not ask for any documents from Petitioner and did not ask him to identify himself.  Id. ¶ 7.[2]  The officers "flashed a phone screen at him and did not provide him [with an] opportunity to inspect the screen they alleged was a valid warrant."  Pet. ¶ 20.  The phone screen had zoomed-in print.  Magalhaes Decl. ¶ 7.[3]  A neighbor asked the officers for paperwork and they showed her a "phone screen with [Petitioner's] name zoomed in on the screen.  Near his name, [she] saw the word immigration."  Hernandez Decl. (dkt. 3-4) ¶ 5.  Petitioner asked what would happen to his child in the car, and the officers "responded in English that he needed to have someone take care of the child or CPS would come for the child."  Id. ¶ 6.  Petitioner does not speak English so his neighbor tried to translate for him, and offered to care for Petitioner's child until she was able to contact Petitioner's wife.  Id.

Petitioner was arrested and transferred to an ICE Field Office at 630 Sansome, San Francisco.  Pet. ¶ 21.  Once at the Field Office, officers showed Petitioner a "warrant for arrest of alien" form signed on June 30, 2025, over a year before the arrest.  Id.; Photo (dkt. 3-5) ("Digitally signed by Christopher T. Howe Date: 2025.06.30 12:28:06-07'00'").  The warrant has a blue handwritten alien registration number (after a typed number "0") in the top right corner.  Photo.  The warrant states "[cut off] determined that there is probable

---

[2] The application for a TRO asserts that the officers' weapons were drawn.  See App. at 9.
[3] Respondents asserted at the motion hearing that the phone screen was an image of the warrant, while Petitioner disputed that assertion.

United States District Court
Northern District of California

cause to believe that CORIA RAMIREZ, Jose [cut off] --vable from the United States. This determination is based upon:" and then there are blue handwritten "X" marks next to two listed bases: (1) "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S." and (2) "statements made voluntarily by the subject to an immigration officer and/or reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Id.

Petitioner filed a habeas petition on July 8, 2026. See Pet. The petition includes causes of action for: (1) violation of 8 U.S.C. § 1357(a)(2) (warrantless arrest without probable cause of flight risk); (2) warrantless arrest in violation of the Fourth Amendment; (3) violation of the Fifth Amendment (arrest without probable cause); and (4) violation of Due Process. Id. Later that day, he filed an application for a TRO. See App. Petitioner asks the Court to: (1) immediately release him from custody and enjoin Respondents from re-detaining him absent further order of the Court; (2) in the alternative, immediately release him from custody and enjoin Respondents from re-detaining him unless they demonstrate at a pre-deprivation bond hearing that he is a flight risk or danger to the community; and (3) prohibit the government from transferring him out of California and or/the country until his habeas proceedings have concluded. See id. at 15.

## II.      LEGAL STANDARD

A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the

United States District Court
Northern District of California

plaintiff's favor, and the other two <u>Winter</u> factors are satisfied." <u>Friends of the Wild Swan</u> <u>v. Weber</u>, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter</u>, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" <u>E. Bay Sanctuary Covenant v. Trump</u>, 932 F.3d 742, 779 (9th Cir. 2018) (quoting <u>Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers</u> <u>Local No. 70</u>, 415 U.S. 423, 439 (1974)).

## III.    DISCUSSION

Petitioner argues that he is entitled to injunctive relief because he has satisfied the <u>Winter</u> factors. App. at 8. The Court agrees.

### A.    Likelihood of Success on the Merits

The likelihood of success on even one claim is sufficient as long as that claim would support the injunctive relief sought. See <u>Dowl v. Williams</u>, No. 13-cv-119-HRH, 2018 WL 2392498, at *1 (D. Alaska May 25, 2018) ("A plaintiff need not establish that he is likely to succeed on the merits of *all* his claims. A TRO . . . may issue if a plaintiff can show he is likely to succeed on one claim and that he meets the other three requirements for injunctive relief.") (emphasis in original) (citing <u>League of Wilderness Defs./Blue</u> <u>Mountains Biodiversity Project v. Connaughton</u>, 752 F.3d 755, 766 n.3 (9th Cir. 2014)). Petitioner argues that he is likely to succeed because his arrest violated 8 U.S.C. § 1357 and the Fourth Amendment. App. at 8.

### 1.    Whether Arrest was Pursuant to Warrant

Petitioner's habeas petition characterizes the arrest as warrantless. See Pet. ¶ 1. At the motion hearing, Respondents disagreed, characterizing the arrest as a "targeted arrest" based on a "warrant prepared beforehand." The Court then asked Respondents a series of

4

questions about the warrant that Respondents rely upon, the photo of which is an exhibit to the TRO application. See Photo. Respondents candidly informed the Court that the blue handwritten alien registration number on the warrant was added after Petitioner's arrest, because ICE had not encountered Petitioner until his arrest, and so Petitioner did not have an "A number" before the arrest. Respondents further stated that they did not know when the blue handwritten "X" marks were written on the warrant. Respondents agreed with the Court that the "X" marks and the alien registration number were both in blue ink. Respondents also ultimately agreed that to adjudicate the TRO, the Court would have to operate on a set of assumptions, and that for the purposes of today's hearing, based on the current record, the Court could assume that the "X" marks were made after the arrest. That is indeed the Court's present assumption.

Assuming the "X" marks were made after Petitioner's arrest, the warrant is invalid. The reason is simple: when, in June of 2025, Authorized Immigration Officer Christopher T. Howe concluded that "there is probable cause to believe that" Petitioner was removable, "[t]his determination [was] based upon" nothing—none of the form's pre-typed bases. See id. A warrant that includes no basis for probable cause is not valid. See U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause."). Respondents argued at the motion hearing that even if the "X" marks were made after the arrest, Petitioner was not prejudiced because counsel has learned that there was an investigation of Petitioner prior to his arrest that demonstrated that Petitioner did not have legal status in this country. And so, Respondents reason, "prior to the arrest there would have been a reason to check" the box next to the last basis. But whether or not there could have been a basis to check one of the boxes, no box was checked. There is no indication on the warrant that there was such an investigation. See Photo. And there is no basis for the Court to conclude that Authorized Immigration Officer Christopher T. Howe determined that "there is probable cause to believe that" Petitioner was removable based on such an investigation, or anything at all.

The Court therefore appreciates Respondents' contention that the arrest was made

pursuant to a warrant, but concludes that Petitioner is likely to succeed in demonstrating that the warrant was not valid.[4]

Petitioner's arrest therefore was, for all intents and purposes, warrantless.

### 2.    Requirements for Warantless Arrest

Warrantless arrests are not per se illegal.  "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).  Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty."  Baker v. McCollan, 443 U.S. 137, 142 (1979).  ICE officers may make arrests without warrants subject to 8 U.S.C. § 1357(a)(2).  That section requires those officers to have "reason to believe [1] that the alien so arrested is in the United States in violation of any such law or regulation and [2] is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2); see also Mountain High Knitting, Inc. v. Reno, 51 F.3d 216, 218 (9th Cir. 1995).  Department of Homeland Security regulations have the same requirement.  See 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").  "Reason to believe" is the equivalent of probable cause.  Tejeda-Mata v. INS, 626 F.3d 721, 725 (9th Cir. 1980).

Respondents point to no basis for the ICE officers involved in Petitioner's arrest to believe that Petitioner was likely to escape before they could seek a warrant.  And Respondents conceded at the motion hearing that the arresting ICE officers did not make a determination that Petitioner was likely to escape.[5]  As in another recent case in this

---

[4] There is also a dispute of fact about whether the ICE officers showed Petitioner the warrant, see Magalhaes Decl. ¶ 9 (Petitioner stated that he asked the ICE officers why he was being detained and asked them to show him the warrant, but "[t]he officers did not reply to his request to see the warrant and remained silent"), and a dispute of law about whether they were required to do so, see App. at 9 (arguing that ICE officers are obligated to serve the warrant at the time of arrest).  The Court need not reach these issues at this point, as it concludes that the warrant Respondents rely on was not valid.
[5] Respondents did assert that Petitioner tried to leave the scene in his vehicle when they

district, where "none of the officers made any individualized determination that any petitioner was 'likely to escape before a warrant can be obtained for his arrest,'" the warrantless arrest likely "violated 8 U.S.C. § 1357(a)(2)." See Order re TRO (dkt. 10) at 3 in Cardenas v. Albarran, Case No. 26-cv-6435-JD (N.D. Cal. July 2, 2026).

Indeed, a likelihood of escape would have been difficult to conceive of here: Petitioner was a long-time resident of Redwood City who lived with his partner and three children and was arrested in his own driveway. App. at 12; see also United States v. Flores-Altamirano, No. 22-50267, 2024 WL 3311136, at *1 (9th Cir. July 5, 2024) (rejecting "likelihood of escape" exception to warrant requirement where "the record shows that ICE surveilled Flores-Altamirano at his home for a protracted period"); Ixchop-Perez v. Barr, 821 Fed. Appx. 690, 694 (9th Cir. 2020) ("nothing in Ixchop's criminal history indicated he was a flight risk. Indeed, the officers knew Ixchop's address before setting out to arrest him."); Araujo v. U.S., 301 F. Supp. 2d 1095, 1101–02 (N.D. Cal. 2004) (no evidence that plaintiff was likely to escape where he was "living with his wife and had filed an Application to Adjust Status . . . hardly evincing an intention to flee."); United States v. Khan, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004) (individual unlikely to escape where he worked two jobs amounting to 16 hours per day, "owned a vehicle and contributed to rent payments for the apartment he shared with a roommate").

Petitioner appears to have been arrested as part of a warrantless arrest that did not satisfy section 1357(a)(2). He is likely to succeed in demonstrating that his arrest lacked probable cause and was therefore unlawful.

### B.    Other Winter Factors

The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990,

---

effectuated the arrest. They do not have bodycam footage of that happening, however.

United States District Court
Northern District of California

1002 (9th Cir. 2012)).  The Ninth Circuit has recognized "the irreparable harm imposed on anyone subject to immigration detention."  Id. at 995.  In Petitioner's case, that harm will fall not only on him but on his family—including his partner and three children.  See App. at 12.

The final two Winter factors, the balance of the equities and public interest, also weigh in favor of granting temporary relief.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  Jorge M. F. v. Wilkinson, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  Here, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal."  See Pablo Sequen v. Kaiser, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025).  At most, the government faces a short delay in detaining Petitioner.  The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996) (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

## IV.    CONCLUSION

The Court concludes that Petitioner satisfies all of the requirements for temporary injunctive relief, and that such relief is necessary to restore the status quo.  See E. Bay Sanctuary Covenant, 932 F.3d at 779 (TRO should be limited to preserving the status quo). The status quo refers to "the last uncontested status which preceded the pending

controversy." Doe v. Noem, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).  That is the moment prior to Petitioner's likely illegal arrest.  See Kuzmenko v. Phillips, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Further, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## V.    ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's application for a TRO is **GRANTED** to preserve the status quo, pending an evidentiary hearing on this matter, which the Court **SETS** for Tuesday, July 21, 2026, at 11:00 am. The Court **DIRECTS** Respondents to file declarations in support of their position by Wednesday, July 15, 2026.  Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody, and are **ENJOINED AND RESTRAINED** from re-detaining Petitioner pending the evidentiary hearing.  Respondents are further **ENJOINED** from removing Petitioner from this district during the pendency of these habeas proceedings.  Respondents shall provide a status report confirming Petitioner's release **within one day**.

**IT IS SO ORDERED.**

Dated: July 10 , 2026

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

9