United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS CORIA RAMIREZ,
Petitioner,

v.

SERGIO ALBARRAN, et al.,
Respondents.

Case No. 26-cv-06973-CRB

**ORDER GRANTING HABEAS PETITION**

On July 8, 2026, when six ICE agents in multiple vehicles arrested Petitioner Jose Luis Coria Ramirez as he was taking his two-year-old child to daycare, see Pet. (dkt. 1) ¶ 1, Tr. of 8/25/2026 (dkt. 22) at 41:1–9,[1] they relied on a Form I-200 Administrative Arrest Warrant that was inexcusably flawed. The I-200 had the date "June 30, 2025" typed in, had Ramirez's name typed in, and was digitally signed by Christopher T. Howe on June 30, 2025. See Photo (dkt. 3-5). The form states: "I have determined that there is probable cause to believe that [Coria Ramirez, Jose] is removable from the United States. This determination is based upon" and then it lists five possible bases for the probable cause determination, each next to a box:

- ☐ The execution of a charging document to initiate removal proceedings against the subject;
- ☐ The pendency of ongoing removal proceedings against the subject;
- ☐ The failure to establish admissibility subsequent to deferred inspection;
- ☐ Biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or

[1] The Court includes more details of the arrest in its Order Granting TRO (dkt. 8) at 1–3.

notwithstanding such status is removable under U.S. immigration law; and/or

☐ Statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

Id. At the time of Ramirez's arrest, his A number was not filled in and none of the boxes was checked. See Tr. of 8/25/2026 at 48:11–19. Accordingly, the I-200 included a bald assertion by Howe that probable cause existed to remove Ramirez, but it failed to indicate any basis for that assertion.

That was not the only problem. After Ramirez had been arrested, after a neighbor who witnessed the arrest had "[i]n desperation . . . offered to help take care of [Ramirez's] child until [she] could contact his wife to take him because they were otherwise going to leave the toddler alone in the car," Hernandez Decl. (dkt. 3-4) ¶¶ 2, 6, and after Ramirez had been transported from just outside his driveway in Redwood City, California, to the ICE field office in San Francisco, California, see Magalhaes Decl. (dkt. 3-3), Ramirez was shown an I-200. That I-200 had Ramirez's A number written in blue handwriting, and it had blue handwritten "x" marks in the last two boxes, indicating that Howe's probable cause determination was based on the "biometric confirmation" and "statements made voluntarily" bases. See Photo. It has now come to light that deportation officer Tyler Baldwin, who participated in Ramirez's arrest, see Tr. of 8/25/2026 at 34:21–23, is the one who made the two "x" marks indicating the probable cause determinations, and who filled in the A number, id. at 37:13–19.

Baldwin did so after Ramirez was already in custody. Id. at 48:11–16. He did so notwithstanding his (accurate) understanding that "deportation officers are not allowed to make probable cause determinations." Id. at 48:20:20–22; id. at 48:23–49:3, 50:3–12.[2] He

[2] See also id. at 11:1–5 (Howe agreeing that "by regulation, only certain individuals at DHS can sign an administrative warrant" and that he is one of them); Djiwaje v. Bondi, No. 26-cv-344-RFB-MDC, 2026 WL 926753, at *3 (D. Nev. April 6, 2026) ("I-200 warrant must be signed by the authorized official who issues it to justify discretionary detention under § 1226(a)"); 8 C.F.R. § 236.1(b) ("A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter"); 8 C.F.R. § 287.5(c)

did so because, he said, "I found that they were incomplete, so I filled them in." Id. at 56:21:22. And he did so without contacting Howe to ascertain what the actual basis for probable cause was when Howe signed the I-200 a year earlier, even though Baldwin knew how to contact him. Id. at 57:2–5; see also id. at 16:10–12 (Howe did not speak with any of the officers about the arrest warrant). It did not occur to Baldwin that "since it's a document signed by [Howe] that maybe [Howe] should fill in the boxes." Id. at 57:6–9. Baldwin did not indicate on the form that he was the one who checked the boxes. Id. at 57:13–21.[3]

Following his arrest and detention, Ramirez filed a habeas petition, arguing that he had been arrested without a properly executed arrest warrant. Pet. ¶ 2. He also sought a temporary restraining order (TRO), which the Court granted. App. (dkt. 3-2); Order Granting TRO. The Court held an evidentiary hearing on August 25, 2026, at which Howe and Baldwin both testified. See Tr. of 8/25/2026. At that hearing, in addition to Baldwin testifying about the arrest and about the improvements he made to the I-200 in 2026, Howe testified about his training and about his signing of that same I-200 in 2025.

Howe testified that he remembered investigating Ramirez's immigration status before signing the warrant, and learning that Ramirez did not have lawful status in the United States. Id. at 18:18–23. Howe testified that he signed the warrant in 2025 on a day when he was filling in as an "acting supervisor," id. at 9:23–10:4, as those individuals are permitted to sign administrative warrants, id. at 11:1–5. He explained that he filled in as acting supervisor intermittently. Id. at 18:5–12. He conceded that while he received "general immigration law training," he did not remember specifically getting training on probable cause determinations. Id. at 11:6–12. Howe further testified that his failure to check a box on the I-200 "was an oversight." Id. at 9:9–13; see also id. at 16:1–2 ("I did

---

("The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(2) of the Act and in accordance with 8 C.F.R. 287.8(c)").

[3] Indeed, Baldwin also testified that he signed the certificate of service that was given to Ramirez, but on re-cross, counsel showed Baldwin the certificate of service, and Baldwin was forced to admit that it was entirely blank. Id. at 57:20–21, 58:12–60:4

United States District Court
Northern District of California

not check the box. And I overlooked that part."). Howe then testified, under questioning by the Court, that he had issued about ten to fifteen warrants in his stints as acting supervisor, and that this was "the only instance that [he] failed to check a box for a determination of probable cause." Id. at 19:7–16 (emphasis added). When the Court asked how he could know that, Howe responded, weakly: "It's the only one that's come up." Id. at 19:17–18. He then admitted that while he had a record of all of the warrants he issued, he had not checked whether those warrants also lacked probable cause determinations. Id. at 20:8–16.

Following the evidentiary hearing, the Court directed Respondents to examine the other warrants that Howe signed during his time as acting supervisor, and to submit a declaration about what they found. Id. at 62:12–19.

Respondents subsequently submitted a declaration by Howe. As an initial matter, the declaration stated that Howe receives annual refresher training that includes "establishing probable cause of immigration violations under the INA." Howe Decl. (dkt. 23) Ex. 1 at 4 ¶ 2.[4] The declaration also stated that during his time as acting supervisor, Howe signed seventeen I-200s, and that of those seventeen, he failed to check a box indicating the basis for a probable cause determination on twelve. Id. at 6–7 ¶¶ 12–13. The declaration insists that "[i]n all instances, [Howe] established probable cause to arrest for immigration violations for these individuals based on a review of agency records before [he] signed the Form I-200s." Id. ¶ 12. And it goes on to assert that one of those cases had a superseding Form I-200, one had a superseding Form I-205, in one there was a new warrant of arrest, one was never encountered and so Howe closed the case, and for seven—after discovering the missing checked boxes in light of this Court-ordered review—others redid immigration checks and signed superseding I-200s. Id. at 6–7 ¶ 13.

Howe's declaration goes on to state that on April 1, 2025, a lead from Homeland Security Investigations (HSI) "was sent to HSI SAC San Francisco" about Ramirez, on

---

[4] One wonders how effective this training is if Howe could not remember having received it.

United States District Court
Northern District of California

April 17, 2025, "[a]n HSI SAC San Francisco GS" approved the lead, and (on an unspecified date) Howe "subsequently ran checks on immigration and law enforcement records to establish probable cause to arrest [Ramirez] for an immigration violation of overstaying non-immigrant visa before signing the Form I-200. Id. at 7 ¶ 14. Respondents also submitted a document entitled "[HSI] Investigative Referral," with the subheading, "Visa Overstay and Alleged Mexican Cartel Affiliate Coria Ramirez," dated April 1, 2025. Referral (dkt. 23) Ex. 2 at 9–14. The document states that "This Investigative Referral (IR) is being sent to Special Agent in Charge (SAC) San Francisco for situational awareness, investigative consideration, and deconfliction with Enforcement and Removal Operations (ERO) to determine if subject can be placed in removal proceedings." Id. at 11. And Respondents submitted a document entitled "[HSI] Case," with the subheading, "NLDC: Visa Overstay and Alleged Mexican Cartel Affiliate Jose Coria Ramirez," with the case agent listed as "Christopher Howe," and a "last updated" date of April 17, 2025. Case (dkt. 23) Ex. 3 at 16–20. The document does not reflect any research by Howe. It states "NOT REFERRED FOR PROSECUTION," id. at 16, it repeats verbatim the same narrative about being sent to the Special Agent in Charge "to determine if subject can be placed in removal proceedings," id. at 19, and it states that the document status is "open" and that the "open approval" date is April 17, 2025, id. at 20. Ramirez submitted a reply to Respondents' filing. See Reply (dkt. 24).

In light of the parties' briefing, their arguments at the evidentiary hearing, and the evidence that came in before, during, and after the evidentiary hearing, the Court reaches the following conclusions.

Howe was not a credible witness. The Court observed Howe carefully during the evidentiary hearing. Howe, like Baldwin, took shortcuts and then tried to present himself and his work in the most favorable possible light.[5] Howe presented his failure to clear

---

[5] Baldwin's testimony lacked credibility as well. See, e.g., Tr. of 8/25/2026 at 43:22–44:4 (Baldwin asserting that Ramirez should have known that he was being stopped by ICE agents, despite their unmarked cars, because "[a]ll officers were wearing uniforms clearly marked ICE, HSI, and police," before conceding that the officers were inside cars with

United States District Court
Northern District of California

even the low bar of checking a probable cause box on Ramirez's I-200 as "an oversight," a sort of one-off mistake. See Tr. of 8/25/2026 at 9:9–13; see also id. at 16:1–2. He testified that Ramirez's I-200 was the only one in which he failed to check a probable cause box. See id. at 19:7–18. That testimony was false: he did the same thing on fully seventy percent of the warrants he signed. See Howe Decl. Ex. 1 at 6 ¶¶ 12–13 (twelve of seventeen).[6] Howe's assertion that Ramirez was the only unlucky person to be arrested pursuant to one of his flawed warrants, id. at 6 ¶ 13, has no legal bearing, and could even be read as suggesting that one unlawful arrest is the cost of doing business.

Moreover, Howe's repeated claim that before signing any I-200, he of course "established probable cause to arrest for immigration violations . . . based on a review of agency records," see id. at 6 ¶ 12; Tr. of 8/25/2026 at 18:18–23 (testifying that he remembered investigating Ramirez's immigration status before signing the warrant), smacks of a student caught cheating on a test who insists that it does not matter because he knew all of the tested material anyway. Given the opportunity to prove Howe's claim,

---

tinted windows); id. at 36:17–23 (Baldwin crediting himself for contacting one of Ramirez's neighbors about taking custody of Ramirez's child); but see Hernandez Decl. ¶¶ 4–6 (neighbor describing far more plausibly a chaotic scene at the arrest, where she approached the "bunch of trucks around [Ramirez's] car" while they were "already putting him in their vehicle," Ramirez "was asking what would happen to his 2-year-old child that was in the car with him," the officers "responded in English that he needed to have someone take care of the child or CPS would come," and the neighbor "was trying to translate for him."). Moreover, his apparent lack of self-reflection in connection with his decision to check the boxes on Ramirez's I-200 (indicating the basis for someone else's probable cause determination) was noteworthy.

[6] Howe is not alone in cutting corners on I-200s. Ramirez collected examples from around the country of "warrants missing key pieces of information: signatures, certifications, time stamps, and probable cause determinations." See Pet. Br. (dkt. 17-1) at 3–4 (colleting cases). These include Djiwaje, 2026 WL 926753, at *3 (unsigned I-200); Moreno v. United States, 826 F. Supp. 3d 835, 845 (W.D. Tex. 2026) (I-200 missing certification form, location of arrest, date of service, language in which warrant was read to individual, name and signature of officer); Clarke v. Dep't of Homeland Sec., No. 25-cv-6773 (GRB), 2025 WL 3674471, at *2 (E.D.N.Y. Dec. 18, 2025) (I-200 unsigned, bears no time notation, and only probable cause box indicates it issued after the biometric appointment); Castanon Nava v. Dep't of Homeland Sec., No. 18-cv-3757, ECF Nos. 350-15 (no probable cause box checked), 350-26 (no probable cause box checked), 372-22 (no probable cause box checked), 372-23 (no probable cause box checked), 372-25 (no probable cause box checked), 406-2 (no probable cause box checked), 406-6 (no probable cause box checked), 406-9 (no probable cause box checked), 445-1 (no probable cause box checked), 445-11 (no probable cause box checked).

Respondents submit only the Referral and Case documents, both from April of 2025, when, per Howe's declaration, Howe was not an acting supervisor. See Referral Ex. 2; Case Ex. 3; Howe Decl. at 5 ¶ 7 (stating that the first time he served as acting supervisor was May 14). No document supports Howe's claim that, in advance of signing Ramirez's I-200 in June of 2025, he "ran checks on immigration and law enforcement records to establish probable cause." Id. at 7 ¶ 14. And the Court will not take Howe's word for it.[7]

Howe's failure to investigate whether there was probable cause is determinative in this case. Respondents argued at the evidentiary hearing that "the Fourth Amendment does not apply to administrative warrants." Tr. of 8/25/2026 at 33:3–8; see also id. at 33:13–15 ("The Supreme Court has declined to hold that administrative warrants such as the I-200 are held to the standards of the Fourth Amendment."); id. at 31:1–11 (relying on Abel v. United States, 362 U.S. 217 (1960)). But that overstates Abel, 362 U.S. at 230–34, which upheld the use of administrative warrants and, in dicta, discussed the relationship between administrative warrants and the Fourth Amendment. Subsequent authority makes clear that probable cause is required to arrest someone, even with an administrative warrant. See United States v. Brignoni-Ponce, 422 U.S. 873, 881–82 (1975) (while immigration officers only need reasonable suspicion to briefly stop a person for questioning, "any further detention or search must be based on consent or probable cause"); Gonzalez v. United States Immigr. & Customs Enf't, 975 F.3d 788, 798 (9th Cir. 2020) ("the Fourth Amendment requires probable cause to seize or detain an individual for a civil immigration offense").[8] Respondents even admitted at the evidentiary hearing that probable cause was

[7] Nor, in light of the many problems with his testimony, does the Court accept Baldwin's claim that he reviewed Ramirez's immigration status and concluded that there was probable cause for the arrest before it occurred, see Tr. of 8/25/2026 at 35:1–6; Baldwin Decl. (dkt. 11-1) ¶ 9. And again, Baldwin admitted that deportation officers are unable to make probable cause determinations. See Tr. of 8/25/2026 at 48:6–8, id. at 48:20–22,

[8] The most significant difference between a judicial warrant and an administrative warrant is in who makes the probable cause determination. See M-J-M-A- v. Hermosillo, 822 F. Supp. 3d 1147, 1171 (D. Or. 2026) ("Nonetheless, 'consistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an executive official, rather than by a judge.'") (quoting Gonzalez, 975 F.3d at 725; citing 8 C.F.R. § 287.5(e)(2)).

United States District Court
Northern District of California

required. See Tr. of 8/25/2026 at 31:16–18.[9] And Respondents conceded that if "there wasn't an investigation or not an investigation that demonstrated that there would be probable cause, that's the end of the argument" as to probable cause. See id. at 32:16–24. The issue is not, as Respondents like to say, a "case . . . about a missing checked box" or a "clerical omission." See, e.g., Resp. Br. (dkt. 11) at 1, 2; Tr. of 8/25/2026 at 64:3–6 (characterizing Ramirez's case as at best raising a regulatory challenge based on "a missed check box"). The issue is the requirement of probable cause for an immigration arrest. There is no credible evidence that Howe investigated whether there was probable cause to arrest Ramirez. Baldwin's unauthorized, handwritten, after-the-fact checkmarks do not supply that necessary evidence. See 8 C.F.R. § 236.1(b) ("A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter"); see also Alfaro v. Mullin, 831 F. Supp. 3d 177, 184 (E.D.N.Y. 2026) ("Courts nationwide have repeatedly rejected this manifestly illegal practice" of ICE officers issuing administrative warrants post-arrest); cf. Djiwaje, 2026 WL 926753, at *3 (requiring signature on I-200 warrant "as this is the sole indication that the requisite probable cause determination has been made by the authorized official at the time of arrest") (emphasis added). Accordingly, that is "the end of the argument." Ramirez was arrested pursuant to an unlawful warrant.

Where there is no lawful I-200 warrant, the only possible justification is the warrantless arrest exception. See Djiwaje, 2026 WL 926753, at *3–4. As the Court held in connection with the TRO, Respondents did not meet the requirements for a valid warrantless arrest. See Order Granting TRO at 6–7; 8 U.S.C. § 1357(a)(2) (allowing warrantless arrests where officers have "reason to believe [1] that the alien so arrested is in

---

[9] This is a good thing. See U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause."); Nathanson v. United States, 290 U.S. 41, 46–47 (1933) ("All unreasonable searches and seizures are absolutely forbidden by the Fourth Amendment. . . . The amendment applies to warrants under any statute; revenue, tariff, and all others. No warrant inhibited by it can be made effective by an act of Congress or otherwise."); Cooper v. Aaron, 358 U.S. 1, 18–19 (1958) (no branch of government can bypass the constitution as interpreted by the Supreme Court).

the United States in violation of any such law or regulation and [2] is likely to escape before a warrant can be obtained for his arrest."); see also Mountain High Knitting, Inc. v. Reno, 51 F.3d 216, 218 (9th Cir. 1995). At the evidentiary hearing, Respondents admitted that "there was no individualized determination made regarding risk of flight," Tr. of 8/25/2026 at 66:18–20, and the Court held that Respondents had failed to demonstrate a likelihood or effort to flee, id. at 67:8–70:1, id. at 70:2–9 ("I don't think there is any indication that the court would find . . . that this individual carrying his two-year-old in the back of a car pursued by three unmarked police vehicles would have engaged in flight from the premises. My guess . . . is that he was surprised by the apprehension, it took him by surprise, he was with his two-year-old daughter and acted consistent with those concerns.").

For the foregoing reasons, the Court GRANTS Ramirez's habeas petition on the basis of the Fourth Amendment.

**IT IS SO ORDERED.**

Dated: September 25, 2026

CHARLES R. BREYER
United States District Judge