United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE LUIS CORIA RAMIREZ,
Petitioner,
v.
SERGIO ALBARRAN, et al.,
Respondents.

Case No. 26-cv-06973-CRB

**ORDER DENYING MOTION TO ALTER OR AMEND THE JUDGMENT**

Respondents move to alter or amend the judgment in this case "to prevent the manifest injustice of the adverse credibility findings against" Howe and Baldwin because "the evidence now submitted to the Court establishes" that both testified credibly. See Mot. (dkt. 26).[1] Respondents contend that they "were not aware that the Court sought [such] documentation before the Order [granting the habeas petition] issued." Id. at 1. And they insist that the Court's statement that "'[n]o document supports Howe's claim that, in advance of signing Ramirez's I-200 in June of 2025, he ran checks on immigration and law enforcement records to establish probable cause'" is "inaccurate" because they have now submitted "documentation proving that Howe ran records checks." Id. at 2 (quoting Order Granting Habeas Petition at 7).[2] "[A] motion for reconsideration should

[1] The Court has not actually entered a judgment in this case, although it granted Ramirez's habeas petition. See Order Granting Habeas Petition (dkt. 25). Ramirez does not contest the timeliness of Respondents' filing but asks the Court to direct entry of a separate final judgment upon the motion's denial. See Opp'n (dkt. 29) at 6 n.1. The Court will do so.

[2] This is Respondents' chief argument; the Court will not discuss each argument that they make in their motion, although it has considered and rejected them. The Court does reach Respondents' assertion that "the Order's statement that 'deportation officers [such as Baldwin] are unable to make probable cause determinations' is legally incorrect" because deportation officers can make warrantless arrests if they have "reason to believe" that an individual satisfies certain criteria. Id. at 12–13 (citing 8 U.S.C. § 1357(a)). The Court

not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

The Court accepts Respondents' representation that they assumed that Howe and Baldwin's credibility would not be relevant to the evidentiary hearing. See Skewes-Cox Decl. (dkt. 26-1) ¶ 4 ("At the August 25, 2026, evidentiary hearing, I did not believe that the credibility of [Howe] and [Baldwin] was at issue."); Mot. at 14 (complaining that "The Court did not alert Respondents after the evidentiary hearing that it had concerns regarding the credibility of Howe and Baldwin" and that they "were not given notice and an opportunity to respond to the Court's credibility concerns, and the evidence submitted herewith thus is not evidence that Respondents reasonably could have understood that they should have submitted earlier.").

But that assumption was not reasonable. Heading into the evidentiary hearing, it was no secret that the Court was concerned about the unusual warrant in this case, with its

---

understands the circumstances under which deportation officers may make warrantless arrests. It explained those circumstances in its first substantive order in this case. See Order Granting TRO (dkt. 8) at 6–7 (two-page section entitled "Requirements for Warrantless Arrest"). However, Respondents have consistently maintained that Ramirez was not subject to a warrantless arrest. Id. at 4 (Respondents "characterize[ed] the arrest as a 'targeted arrest' based on a 'warrant prepared beforehand.'"). The habeas order therefore turned on the constitutionality of Ramirez's arrest based on an "inexcusably flawed" warrant. See Order Granting Habeas Petition at 1. The Court made the challenged statement about deportation officers not being allowed to make probable cause determinations in the course of discussing Baldwin's having checked the probable cause boxes on Ramirez's warrant. See Order Granting Habeas Petition at 2–3 (citing Tr. of 8/25/2026 (dkt. 22) at 48–57). The Court did not get the law wrong—Baldwin did, when he indicated a probable cause determination that he had no authority to make. Nor does Baldwin get credit for "testifying truthfully regarding which probable cause determinations deportation officers are empowered to make," Mot. at 13, when the very act of checking the boxes without contemporaneously indicating anywhere that he was the one who had done so, see Tr. of 8/25/2026 at 57:10–16, was not only unlawful but misleading. Moreover, it does not appear that the boxes that Baldwin checked—"biometric confirmation of the subject's identity" and "statements made voluntarily by the subject to an immigration officer"—actually reflect Howe's probable cause determination. See Opp'n at 18 (noting that Ramirez's biometrics were taken after his July 2026 arrest and that none of Howe's 2025 searches involved any statement by Ramirez). This is unsurprising given Baldwin's failure to reach out to Howe before checking the boxes, even though he knew how to contact him. See Tr. of 8/25/2026 at 57:2–9.

blue, handwritten "X" marks indicating the bases for probable cause. Order Granting TRO at 2–6; Photo of Warrant (dkt. 3-5).[3] At the TRO hearing, Respondents had "argued . . . that even if the 'X' marks were made after the arrest, [Ramirez] was not prejudiced because counsel has learned that there was an investigation of [Ramirez] prior to his arrest that demonstrated that [Ramirez] did not have legal status in this country." Order Granting TRO at 5. In granting the TRO, the Court had stated that "[t]here is no indication on the warrant that there was such an investigation. . . . And there is no basis for the Court to conclude that . . . Howe determined that 'there is probable cause to believe that' [Ramirez] was removable based on such an investigation, or anything at all." Id. Ramirez argued before the evidentiary hearing that "[t]o date, the Court has not received any affidavit from 2025 with specific, credible facts that support Respondents' assertion that the warrant was signed with probable cause" or "findings of the alleged investigation [Howe] conducted nor a sworn statement from him." See Reply re Response (dkt. 17-1) at 1–2. Respondents concede now that they knew that "the basis for the probable cause determination that support[s] Howe's signature on the Form I-200" was one of the issues in this case. See Skewes-Cox Decl. ¶ 3. Moreover, the Court had ordered Howe and Baldwin to appear in person at the evidentiary hearing. See Order re Government Response (dkt. 12). Why did Respondents think that the Court ordered those witnesses to be present if not to get to the root of the parties' factual disputes about the warrant—including whether Howe investigated Ramirez before issuing the warrant, upon what information Howe based his determination of probable cause, whether Baldwin checked the boxes on the warrant, and when, and based on what information, and under what authority—and to weigh both men's credibility?

That is the purpose of an evidentiary hearing. See Hohlbein v. Hospitality Ventures LLC, No. 05-16429, 248 Fed. Appx. 804, 806 n.2 (9th Cir. 2007) ("'Because there were

---

[3] The Court uses the word "unusual" here because this is the first such warrant that this Court has encountered. However the Court does not actually know how unusual the warrant is. See Order Granting Habeas Petition at 6 n.6 (collecting other "examples from around the country of 'warrants missing key pieces of information.'").

disputed factual issues and witness credibility determinations to be resolved, we conclude that the district court was required to conduct an evidentiary hearing.'") (quoting United States v. 1998 MBW, 235 F.3d 397, 400 (8th Cir. 2000)); McCain v. Dep't of Corrs., No. C20-5650-RSM, 2021 WL 3602521, at *2 (W.D. Wash., Aug. 13, 2021) ("evidentiary hearings serve to address material disputes of fact and weigh credibility."). Credibility determinations in particular are central to a trial court's role. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (holding that a trial court is in a superior position to assess a witness's credibility; adding that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what was said."). Indeed, appellate courts are to "give singular deference to a trial court's judgments about the credibility of witnesses" because of the trial court's close observation of the witnesses. Cooper v. Harris, 581 U.S. 285, 309 (2017); see also Fed. R. Civ. P. 52(a)(6) ("reviewing court must give due regard to the trial court's opportunity to judge the witness's credibility").

At the evidentiary hearing, the Court observed Baldwin and Howe on the stand and concluded that they were not credible. See, e.g., Order Granting Habeas Petition at 5 ("The Court observed Howe carefully during the evidentiary hearing. Howe, like Baldwin, took shortcuts and then tried to present himself and his work in the most favorable possible light."). For example, Howe testified that his failure to check any probable cause box on the warrant was "a mistake on [his] part" and that he "overlooked that part." Tr. of 8/25/2026 at 15:24–16:2; see also id. at 9:13 ("It was an oversight, a mistake on my part."). The Court was openly skeptical of Howe's testimony, which left the impression that his failure to check any of the probable cause boxes on Ramirez's warrant was a one-time mistake. The Court therefore asked Howe, to the best of his recollection, approximately how many times he had issued a warrant. Id. at 19:7–10. Howe guessed 10 to 15 times. Id. at 19:11–13. The Court then asked Howe: "Is this the only instance that you failed to check a box for a determination of probable cause?" Id. at 19:14–15. Howe replied with an unequivocal "Yes." Id. at 19:16. When the Court asked Howe how he knew that,

Howe responded that "It's the only one that's come up," and then, when the Court pushed again, asking how he could be sure, Howe responded, "I would have to, yeah, go back and, I guess, check my records." Id. at 19:17–22. Howe admitted that he had not done that, even though he had access to such records on his computer. Id. at 19:23–24, 20:8–16.[4] This evinced a concerning apathy toward factual accuracy in an area—the issuance of arrest warrants—where accuracy could not be more important. Cf. Atwater v. City of Lago Vista, 532 U.S. 318, 364 (2001) (O'Connor, J., dissenting) ("A custodial arrest exacts an obvious toll on an individual's liberty and privacy, even when the period of custody is relatively brief."). The Court did not accept Howe's contention that Ramirez's was the only flawed warrant. See id. at 24:25–25:1 ("And that's what I'm about to find out. We'll see. Maybe it is [the only instance of Howe issuing a warrant with no probable cause boxes checked]. Hopefully."). Because the Court directed Respondents to look into "every warrant that Mr. Howe issued," id. at 24:25–25:12, it came to light after the evidentiary hearing that Howe in fact signed seventeen I-200 warrants, and that "he failed to check a box indicating the basis for a probable cause determination on twelve" of them. Order Granting Habeas Petition at 4 (citing Howe Decl. (dkt. 23) Ex. 1 at 6–7 ¶¶ 12–13) (emphasis in original). That fully seventy percent of the warrants that Howe issued contained the same critical omission—and not just the one that had "come up"—underscored Howe's lack of credibility in his initial testimony and his tendency to report his performance more favorably than correctly.

Although Respondents should have known to submit evidence supporting the probable cause determination at the evidentiary hearing—because it was one of the main issues at that evidentiary hearing[5]—the Court allowed Respondents to supplement the

[4] Howe later cleaned up that testimony a bit following further questioning from the Court, agreeing that "this is the only time in 10 or 15 . . . occasions that [he] didn't fill out the box," before adding, "This is the only time that I can recollect. I haven't gone back to the other ones that I've signed, Your Honor. I can do that. But this is the only issue that's come up a year later." Id. at 23:11–24:24.

[5] As Ramirez points out, "It was Respondents who invoked the I-200 signed by Howe as the legal justification for detaining [Ramirez], and Respondents who put Howe's pre-signing investigation at issue through his testimony and declaration." Opp'n at 16.

United States District Court
Northern District of California

record following the hearing. The Court stated at the evidentiary hearing that "I have to be satisfied that this investigation was conducted" and "I'm giving the government the opportunity to supplement the record in that regard." Tr. of 8/25/2026 at 32:9–12. Respondents conceded at that time that if "'there wasn't an investigation or not an investigation that demonstrated that there would be probable cause, that's the end of the argument' as to probable cause." Order Granting Habeas Petition at 8 (quoting Tr. of 8/25/2026 at 32:16–24). The Court allowed Respondents to submit "the information that was given to Mr. Howe in connection with this case," id. at 62:12–16, which Respondents should have understood as the information that Howe had about Ramirez that supported the probable cause determination. Howe swore in connection with his post-hearing submission that upon receiving referrals, he "ran checks on immigration and law enforcement records to establish probable cause," see Howe Decl. ¶ 14, but he still did not attach any document establishing that he actually did so, see Order Granting Habeas Petition at 4–5 (discussing that the Howe Declaration had attached exhibits consisting of two referrals from Homeland Security Investigations but no actual follow-up work by Howe).[6] The Court observed in granting the habeas petition that no document supported Howe's assertion that he had done an investigation, and that the Court would "not take Howe's word for it." Id. at 7.

Given Respondents' failure to submit evidence of Howe's investigation at the evidentiary hearing, or even following the evidentiary hearing when the Court directed it to do so, the Court will not accept any such evidence now.[7] "Counsel's after-the-fact regret about how he read the Court's post-hearing instructions does not convert evidence Respondents chose not to offer into 'newly discovered' evidence." Opp'n at 6. "A Rule

---

[6] The Court also noted that the declaration included a sweeping and unsupported assertion that before signing any I-200, Howe of course established probable cause based on a review of records. See Order Granting Habeas Petition at 4, 6 (citing Howe Decl. ¶ 12).

[7] To be clear: the Court does not hold that the database queries from April and May 2025 that Respondents seek to submit, which occurred before Howe was authorized to issue an administrative warrant and before he issued Ramirez's warrant on June 30, 2025, would warrant reconsideration even if the Court were to accept them.

59(e) motion may not be used to . . . present evidence for the first time when [it] could reasonably have been raised earlier in the litigation." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 212 (9th Cir. 1987) ("Evidence is not 'newly discovered' under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence.").[8] The Court therefore rejects Respondents' argument that "the evidence submitted herewith . . . is not evidence that Respondents reasonably could have understood that they should have submitted earlier." See Mot. at 14.

The Court's credibility determinations against Howe and Baldwin are not manifestly unjust. Those witnesses' credibility was necessarily at issue when they testified about a range of issues at the evidentiary hearing, and the Court, observing them closely, concluded that both lacked credibility. See Order Granting Habeas Petition at 5–7; see also Abbott v. League of United Latin Am. Citizens, 146 S. Ct. 418, 421 (2025) (Kagan, J., dissenting) ("We are a higher court than the District Court, but we are not a better one when it comes to making . . . a fact-based decision."); Anderson, 470 U.S. at 574 ("The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise."). Respondents' late evidentiary submissions do not warrant reconsideration of the credibility determinations or the habeas petition itself. See 389 Orange Street Partners, 179 F.3d at 665.

For the foregoing reasons, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 19, 2026

CHARLES R. BREYER
United States District Judge

[8] The new version of the I-200 that Respondents seek to submit in order to rehabilitate Baldwin, see Skewes-Cox Decl. Ex. 1, is not newly discovered, as it was in Ramirez's A file throughout this case, see Skewes-Cox Decl. ¶ 8. However, the Court does not hold that it would warrant reconsideration even if the Court were to accept it.